Monell, J.
No claim is made against the defendants in this case, founded upon any representation alleged to have been made by them in respect to the validity or value of the bonds. If any such claim was made, the representations stated to have been made by the defendants would, I think, fall far short of being sufficient to sustain a cause of action. They were merely expressive of an opinion of and a belief in the válidity and value of the bonds, and contain no evidence of any fraudulent purpose on the part of the defendants.
Nor is there any question properly involved, in respect to the bona fide ownership of the bonds by the plaintiffs. For the purposes of the action, and upon the proof before me, it appears that they made advances upon the security of the bonds, which were of the genuine issue of the Peruvian and Chilian governments, without any notice that they had been, as is now alleged, misappropriated or misapplied by some functionary or agent of those governments. Havingreceived the bonds under. such circumstances, it is not probable that the mere wrongful putting in circulation of bonds payable to bearer, and transferable by delivery, by the agent of the obligors having them in his custody, would invalidate the title of a purchaser for value and without notice. This is upon the principle applicable to the diversion of notes or the wrongful issue o' stock (Merchants’ Bank v. New York & New Haven Railroad Company, 13 N. Y., 599, 611), and is carried much farther in respect to stolen bonds of a similar character.
Nor do I conceive that any inquiry into the sufficiency of the reasons assigned by the defendants for the non payment of the January interest is legitimately involved in the motion now before me. I am bound perhaps, to assume that such reasons were in fact sufficient, or were at least regarded as sufficient by the Peruvian and Chilian governments, to authorize their withholding payment. At any rate, the defendants, the agents of, and acting under instructions from those governments, would violate their trust and duty if they disregarded or *473 disobeyed their instructions; and they have no right, either in respect to the interests of creditors or otherwise, to inquire into or question the sufficiency or propriety of the reasons assigned by their principals for any direction they might see fit to make respecting the agency, nor indeed to require any reasons whatever.
The sole question then is—have the plaintiffs stated facts, which, in their legal effect, are sufficient to authorize the interference by a court of equity to compel the payment of money, in the hands of an agent of a foreign government, to creditors of such government ? No action can be sustained by these plaintiffs against the Peruvian and Chilian governments. Our courts have no jurisdiction over foreign powers, and disputes or claims arising between or in favor of our government, or the citizens of our government, and a foreign power, can be settled only by treaty or by war. Nor am I aware of any law under which the moneys in the defendants’ hands can be impounded or attached at the suit of a creditor, or can in any other way be reached or applied to the payment of debts existing here against the foreign principals ; and it is therefore^ probable that the plaintiffs are without remedy, beyond such as is provided in the bond, or such as they may induce the government of the United States to resort to in their behalf. The only jurisdiction which, by any pretence, a court of equity could exercise in a cáse like this, is in exerting its restraining power to prevent, pending the litigation, a disposition of the fund provided for the payment of interest, which might deprive the plaintiffs of the benefit of such judgment as they might obtain. So far as any other relief is concerned, the remedies at law would, if the plaintiffs have any remedy, be quite adequate.
But while courts of equity recognize and protect rights and redress wrongs, their jurisdiction over these subjects is confined to such rights or wrongs only as are exclusively and exactly distinguished from that portion of remedial justice which is properly administered by courts of common law. And while courts of equity administer remedies for rights which are not recognized by courts of common law, the foundation which sustains the jurisdiction of either court is the same; and the *474 cause of action must be such that the court can take hold of it and apply appropriate remedies and give appropriate redress. There is no principle of equity which will sanction its assuming jurisdiction, merely because at law there is no remedy, unless the facts are such as make up a case exclusively for equitable relief. In other words, theré must be a cause of action, whether resort is had to the one forum or the other.
In' this case, it seems quite clear that the plaintiffs have not made out a claim for the equitable relief they seek to obtain. As before remarked, our courts have no power over the foreign principals under whose authority and control the defendants can alone rightfully act. And, being without jurisdiction over the parties, we cannot assert our authority over the property of such parties, notwithstanding such property is within our territorial limits. The fund in question is the property of the Peruvian and Chilian governments, and not the property of the defendants, and there is no proceeding in rem unless in actions over whose parties we have acquired or can acquire . jurisdiction. I cannot, therefore, discover any ground upon which this action can stand. I have endeavored to find some analogy in principles applicable to equitable assignments, or equitable liens, but without success. The plaintiffs cannot reach the fund because they cannot reach its owners. It is a misfortune, it may be wrong, but our courts are without power, and the plaintiffs must be left to pursue such other course as may be open to them. If this act of repudiation was without justifiable reason, it should perhaps, (if not a casus beUi)'be the subject of diplomatic negotiation between these foreign powers and the government of the United States.
The injunction must be dissolved, with the usual motion costs.